## S. G. GROSS v. STATE.

No. A-4341. Opinion Filed Jan. 31, 1924.
(222 Pac. 275.)

(Syllabus.)

1. **Homicide—Army Record of Deceased to Rebut Evidence of His Bad Character.** The admission in evidence of the enlistment record and discharge of the deceased, to rebut evidence introduced by the defendant attacking the general character of the deceased for peace and as a law-abiding citizen, held not to be reversible.

2. **Witnesses—Inquiry as to Mental Attitude as Foundation for Impeachment.** An inquiry touching the mental attitude or state of feeling of a witness is a proper foundation for impeachment.

3. **Homicide—Refusal of Testimony as to Character of Deceased's Place of Business, Harmless, after Admitting Testimony of Reputation as Violent and Quarrelsome.** Where self-defense was claimed, and the trial court permitted the defendant to introduce evidence of the general bad reputation of the deceased as a violent, turbulent, and quarrelsome man, the refusal of the trial court to permit the defendant further to prove that the place of business conducted by the deceased was a place of public resort, in which lewd white women congregated, and that intoxicating liquors were sold therein, was harmless.

4. **Instructions Approved.** The instructions as a whole are held to fully cover the law of the case, in a manner as fair to the defendant as the evidence warranted, and, further, they are held to be unambiguous and not misleading or contradictory.

Appeal from District Court, Tulsa County; Albert C. Hunt, Judge.

S. G. Gross was convicted of manslaughter in the first degree, and sentenced to serve a term of 18 years in the penitentiary, and he appeals. Affirmed.

Burns, Joyce & Hulett, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore and J. Roy Orr, Asst. Attys. Gen., for the State.

MATSON, P. J. This is a prosecution by indictment, returned into the district court of Tulsa county on the 29th day of September, 1920, charging S. G. Gross and H. J. Green with the crime of murder, alleged to have been committed on the 25th day of September, 1920, in Tulsa county, Okla., by shooting one Clem Williams, and on a separate trial the defendant Gross was found guilty of manslaughter in the first degree, and punishment fixed by the jury as above stated. Judgment was rendered November 10, 1921, and petition in error and case-made were filed in this court April 29, 1922.

Defendant S. G. Gross was a negro police officer of the city of Tulsa at the time of the homicide, and the deceased Clem Williams, was engaged in running a wagon and feed yard, with a short-order restaurant, at No. 9 South Lansing street in the city of Tulsa. The wagon yard and restaurant of deceased was located on the regular beat of this defendant when on duty as police officer. The testimony of the defendant tends to show that on the night of September 25, 1920, some time between 11 o'clock and midnight, the defendant was in the act of passing the wagon yard operated by the deceased. The wife of the deceased was at that time standing in the gate of the wagon yard, and defendant claims that he looked into the wagon yard and noticed a boy in the wagon yard hand a package of some kind to the deceased, and that his codefendant, Green, who was a constable, was with him at that time; that defendant had been advised by the police department that the wagon yard and eating place conducted by the deceased was a place of questionable repute, and that, when he noticed this boy hand deceased the package, he requested Green to come with him into the

wagon yard and help investigate; that upon investigation defendant found a paper sack sitting by an automobile; that this sack contained a quart bottle of corn whisky; that the defendant picked up said package; that about that time deceased came out of the building and walked up to defendant and asked him what was going on; that deceased immediately walked around defendant to the right side of defendant and grabbed the sack and bottle out of defendant's hand and said, ''You black son of a bitch, what are you going to do with that,'' and immediately threw the bottle at defendant; that the defendant dodged the bottle and then deceased stepped back and slapped his hand to his hip pocket; thereupon defendant fired one shot at deceased, which killed him instantly.

The testimony on the part of the state's witnesses is somewhat at variance with that given by the defendant. They testify that the defendant entered the wagon yard and commenced to search about the place looking for whisky; that defendant and Green accosted the boy, and defendant asked him what he was doing dodging around; that about this time deceased came out of the restaurant and asked the negro officers what they wanted in his place, and said that, if the boy had done anything, he was working for him, and that he (Williams) would stand good for anything that he had done; that about that time a gun was drawn on the boy, and that Alberta Williams, the wife of the deceased, hollered, ''Don't shoot that boy;'' whereupon, the defendant turned on the deceased and fired one shot, which took effect slightly below the heart, and caused almost instant death.

Cy Boyd, a merchant policeman, who was on duty at that time, and had been in the wagon yard and restaurant just a few minutes before the shooting, was about a half a block away when he heard a shot, and he immediately ran

back to the wagon yard and arrived there very shortly after the shooting. Defendant contended that the deceased threw a bottle of whisky at him just before he placed his hand on his hip pocket as if to shoot, and Boyd testified that he saw no broken whisky bottle or saw no whisky immediately after the shooting; that he found the neck of a broken bottle near the fence of the wagon yard, but that it looked as if it had been lying there for weeks. The witness C. O. Logan, for the defendant, testified that he saw some evidence of whisky on the sidewalk just outside of the wagon yard fence.

The theory of the state was that the defendant was a trespasser on the premises of the deceased, that, although an officer, he at the time of the killing was making an illegal search of the deceased's premises, and that the killing was entirely unnecessary and without justifiable cause. The theory of the defendant was that the shooting was in his necessary self-defense.

A synopsis of the testimony of each witness is not necessary to be incorporated in this opinion.

It is first contended that the trial court erred in admitting certain incompetent, irrelevant, and immaterial testimony in rebuttal.

This assignment relates to the admission in evidence of the enlistment record and discharge of the deceased from the United States army. The purpose of its admission was to rebut evidence offered by the defendant, attacking the general character of the deceased for peace and as a law-abiding citizen.

While this evidence perhaps had no great bearing upon the issue of the general character of the deceased for the above traits of character, it forms no good basis for the

reversal of this judgment. A reading of the record before us convinces us that this killing was entirely unnecessary and incompatible with the duties of a police officer, and that the statement of the defendant himself, as to the circumstances under which the killing occurred, was not such as to absolve him from blame. Under such circumstances, by express provision of section 2822, Compiled Statutes 1921, this court is not authorized to reverse a judgment of conviction on the ground (among others) of the improper admission of evidence.

What is said in respect to the first assignment of error is clearly applicable to the second assignment of error, to the effect that the court erred in permitting Alberta Williams, the wife of the deceased, to testify that the deceased had served in the army.

It is next contended that the trial court erred in permitting the state to ask the defendant on cross-examination if he had not stated to the witness Cy Boyd, about a month prior to the shooting, on Lansing and Hodge street, in the city of Tulsa, "I will have to kill three or four of these son of a bitches here before I can get along with them," to which question the defendant answered, "No, sir." On rebuttal, the witness Boyd was called to the stand, and over the objection of the defendant was permitted to testify that on the occasions stated the defendant did testify to that effect.

We are of the opinion that the matter contained in the question propounded was material to the issues joined, and such as the defendant could be impeached upon. The alleged conversation occurred in the immediate vicinity of where the shooting took place, just about a month before the shooting. While the threat was somewhat general in its nature, it was for the jury to say whether or not the deceased was intended

to be included within the class of those whom the defendant designated as "son of a bitches" living in that neighborhood. McDaniel v. State, 8 Okla. Cr. 209, 127 Pac. 358.

An inquiry touching a witness' mental attitude or state of feeling is a proper foundation for impeachment. 7 Encyclopedia of Evidence, p. 86.

It is next contended that the trial court erred in excluding certain competent and material evidence offered in behalf of the defendant. The court refused to let the witness R. Webb answer the questions: "What kind of a business did they carry on in the wagon yard?" also "Do you know whether or not the Farmers' wagon yard was a place of public resort?" and also "Do you know whether or not it was a place where lewd women congregated and where intoxicating liquors were sold?"

After objection had been sustained to each of these questions, counsel for defendant offered to prove by the witness Webb:

"That the Farmers' wagon yard, on and prior to the 25th day of September, 1920, and during the time it was conducted by the deceased, Clem Williams, was a place of public resort, in which lewd white women congregated, and that intoxicating liquors were sold there by the deceased, and that it was commonly known as a notorious place."

The court excluded this evidence, to which counsel for the defendant objected. The trial court permitted the witness, however, to testify that he was acquainted with the general reputation of the deceased as a violent, turbulent, quarrelsome man, and that such reputation was bad.

We fail to see wherein an exclusion of this proffered evidence had any material effect on the result of this trial. The shooting occurred on that part of the premises known as the wagon yard, and the only persons present were the

deceased and his wife, the defendant, and a boy who worked for the deceased, and the defendant's companion officer. There is no contention on the part of the defendant that he entered said premises for the purposes of quelling a riot or other disturbance of the peace. The defendant was permitted himself to testify as to his own knowledge of the premises and of its reputation. That a wagon yard is a place of public resort goes without saying. The reputation of the place as a place where lewd women congregated was immaterial under the issues in this case. As to whether or not it was a place where intoxicating liquors were sold was also immaterial, but the defendant himself was permitted to testify that it was known as such a place. It is the opinion of the court that whatever was relevant to be proved by the offer as to the witness Webb was subsequently proved by other evidence, and it is equally apparent that the evidence excluded could not have changed the result. This assignment, therefore, presents no good ground for reversal of the judgment. Addington v. State, 8 Okla. Cr. 703, 130 Pac. 311.

The remaining assignments of error relate solely to the instructions contained in the general charge of the court. Numerous of these instructions were not objected to in the trial court. To enter into a lengthy discussion of these various assignments of error would prolong this opinion to an unnecessary length. The writer of this opinion has carefully read the entire charge. The trial court fully covered the law of the case in a manner as fair to the defendant as the evidence warranted. The instructions as a whole are not ambiguous, misleading, or contradictory, but correctly state the law of the case. They were sufficient in every respect, and gave the defendant the full benefit of his plea of self-defense, and covered also in a manner very favorable to him the law relative to his right as an officer to make an arrest.

As we view the evidence in this case, there is very little justification for this homicide. The defendant, although a police officer, clearly transcended his duties as such, and at the time of the killing was, under the statutes of this state, a trespasser on the premises of the deceased. The amount of force employed by him was apparently unnecessary. The deceased was unarmed. Under the state's evidence, this homicide was murder, and under the defendant's own testimony this judgment could not be reversed, without doing violence to those well-known principles of law which point the duty of one engaged in a conflict to avoid the necessity of attack, if possible, and to use only such force as is necessary to prevent injury to himself. To hold that the defendant was entirely blameless in bringing on the occasion which resulted in the killing of the deceased would constitute a travesty on the law of self-defense.

The judgment is affirmed.

BESSEY and DOYLE, JJ., concur.